# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| **BIG HART MINISTRIES ASSOCIATION INC. a/k/a BIG HEART MINISTRIES, et al.,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 3-07-CV-00216** |
| **CITY OF DALLAS,** | § § | |
| **Defendant.** | § § | |

## PLAINTIFFS BIG HART MINISTRIES ASSOCIATION INC. ET AL.'S BRIEF IN OPPOSITION TO DEFENDANT CITY OF DALLAS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ........................................................................... 1

II.  THE CITY'S SUMMARY JUDGMENT BURDEN ......................................... 1

III.  RESPONSE TO THE MOTION'S STATEMENT OF FACTS......................... 2

IV.  BECAUSE THE MOTION CONTAINS LITTLE MORE THAN CONCLUSORY
STATEMENTS, IT CANNOT SUSTAIN SUMMARY JUDGMENT, NOR CAN IT
SURVIVE IF CONVERTED TO A MOTION TO DISMISS ........................... 3

    A.  42 U.S.C. § 1983 ................................................................................ 3

    B.  Texas Religious Freedom Restoration Act ("TRFRA") ........................ 4

    C.  Vagueness and Overbreadth ................................................................ 4

    D.  When Converted To A Rule 12(B)(6) Motion, The Motion Still Fails. ............... 5

V.  SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFFS' CLAIMS IS
IMPROPER........................................................................................................ 5

    A.  No Reasonable Fact-Finder Could Conclude Plaintiffs Lack Standing................. 5

        1.  Plaintiffs have Suffered Several Injuries, All of which Confer
Standing in and of Themselves. ................................................... 5

            i.  Loss of First Amendment Freedoms............................... 6

            ii.  The City's Threats of Prosecution ................................... 8

            iii.  Deterrent Effect................................................................ 9

            iv.  Lost Volunteers ................................................................ 9

        2.  The Ordinance Caused Plaintiffs' Injuries and a Favorable Ruling
from this Court will Redress those Injuries. ............................... 10

        3.  Third Party Standing ................................................................... 11

    B.  Plaintiffs Have Estabilshed The Elements Of 42 U.S.C. § 1983. ......... 11

    C.  The Motion Ignores Plaintiffs' Evidence, Which At A Bare Minimum,
Creates A Fact Issue With Respect To The TRFRA Claim.................... 12

        1.  Plaintiffs' Free Exercise Of Religion....................................... 12

i

2. The Ordinance Substantially Burdens Plaintiffs' Free Exercise Of Religion ................................................................................................. 13

3. The Ordinance does not Further a Compelling Governmental Interest ..................................................................................................... 15

4. Any Purported Governmental Interests are not Narrowly Tailored .......... 17

D. The City's Conclusory Allegations Render Summary Judgment On Plaintiffs' Free Exercise Claim Inappropriate. ..................................................... 18

E. The City is not entitled to summary judgment on Plaintiffs' Equal Protection claim. ........................................................................................................ 20

1. Disparate Treatment of Similarly Situated Groups .................................. 20

2. The City Lacks a Rational Basis for the Differential Treatment. ............. 21

F. The Evidence Supports Plaintiffs' Right to a Liberty Interest in Food. ............... 23

VI. CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

<u>Cases</u>

*A.A. v. Needville Indep. Sch. Dist.,*
　611 F.3d 248 (5th Cir. 2010) ................................................................. 13, 15, 16

*Adventure Plus, Inc. v. City of Dallas,*
　2001 U.S. Dist. Lexis 12612 (N.D. Tex. Aug. 16, 2001) ...................................... 7, 8

*Altman v. Bedford Central Sch. Dist.,*
　245 F.3d 49 (2d Cir. 2001) .................................................................................. 6

*Am. Baptist Churches in the U.S.A. v. Meese,*
　666 F. Supp. 1358 (N.D. Cal. 1987) ................................................................... 10

*Ashe v. Corley,*
　992 F.2d 540 (5th Cir. 1993) ................................................................. 1, 2, 3, 4, 5

*Bankshot Billiards, Inc. v. City of Ocala,*
　692 F. Supp. 2d 1343 (M.D. Fla. 2010) ................................................................ 8

*Bannum, Inc. v. City of Louisville,*
　958 F.2d 1354 (6th Cir. 1992) .......................................................................... 22

*Barr v. City of Sinton,*
　295 S.W.3d 287 (Tex. 2009) ................................................................. 4, 12, 13, 16

*Bd. of Regents v. Roth,*
　408 U.S. 564, 572 (1972); ................................................................................ 23

*Beckerman v. City of Tupelo,*
　664 F.2d 502 (5th Cir. 1981) ............................................................................. 7

*Bench Billboard Co. v. City of Toledo,*
　690 F. Supp. 2d 651 (N.D. Oh. 2010) ................................................................. 7

*Bennett v. City of Slidell,*
　735 F.2d 861 (5th Cir. 1984) ............................................................................ 11

*Bischoff v. Florida,*
　242 F. Supp. 2d 1226 (M.D. Fla. 2002) ........................................................... 8, 10

*Ch. Of The Holy Light of the Queen v. Mukasey,*
　2008 U.S. Dist. Lexis 102990 (D. Ore. Dec. 19, 2008) ........................................... 8

*City of Cleburne v. Cleburne Living Center, Inc.,*
　473 U.S. 432 (1985) ................................................................................ 20, 21, 22

DM_US:23500386_5

*Craig v. Boren,*
    429 U.S. 190, 195 (1976)................................................................................................ 11

*Croft v. Governor of Texas,*
    562 F.3d 735 (5th Cir. 2009) ........................................................................................... 6

*Dias v. City and County of Denver, Colorado,*
    2010 U.S. Dist. Lexis 103814 (D. Col. Sept. 29, 2010) ........................................... 9

*Doe v. Taylor Independent School Dist.,*
    15 F.3d 443 (5th Cir. 1994) ........................................................................................... 23

*Freedom from Relig. Found. v. McCallum,* 179 F. Supp. 2d 950, 965 (W.D. Wis. 2002)........... 11

*Galindo v. Precision Am. Corp.,*
    754 F.2d 1212 (5th Cir. 1985) .................................................................................... 2, 4

*George v. King,*
    837 F.2d 705 (5th Cir. 1988) ........................................................................................ 24

*Gutierrez v. The City of Mesquite,*
    2001 U.S. Dist. Lexis 17719 (N.D. Tex. Oct. 30, 2001) ......................................... 11

*Hernandez v. Hines,*
    159 F. Supp. 2d 378 (N.D. Tex. 2001) ....................................................................... 24

*LeBlanc-Sternberg v. Fletcher,*
    67 F.3d 412 (2d Cir. 1995) ............................................................................................. 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)......................................................................................................... 10

*McKinley v. Abbott,*
    2010 U.S. Dist. Lexis 33499 (W.D. Tex. Mar. 25, 2010)..................................... 6, 8

*Merced v.  Kasson,*
    577 F.3d 578 (5th Cir. 2009) ................................................................................. 13, 16

*Myers v. Chicago,*
    95 F. 406 (8th Cir. 1899) ............................................................................................... 23

*Newdow v. Congress,*
    435 F. Supp. 2d 1066 (E.D. Cal. 2006) ...................................................................... 10

*Nitke v. Ashcroft,*
    253 F. Supp. 2d 587 (S.D.N.Y. 2003) .......................................................................... 9

*Russ v. Int'l Paper Co.,*
   943 F.2d 589 (5th Cir. 1991) ................................................................ 1

*Seastrunk v. Darwell Integrated Tech., Inc.,*
   2009 U.S. Dist. Lexis 77286 (N.D. Tex. Aug. 27, 2009) ..................... 3

*St. Paul Mercury Ins. Co. v. Williamson,*
   224 F.3d 425 (5th Cir. 2000) .......................................................... 2, 5

*Stanford v. Gas Service, Co.,*
   346 F. Supp. 717 (D. Kan. 1972) ...................................................... 24

*Trautmann v. Co-Gema Mining, Inc.,*
   2007 U.S. Dist. Lexis 39387 (S.D. Tex. May 30, 2007) ....................... 3

*U.S. v. Robison,*
   78 F.3d 172 (5th Cir. Tex. 1996) ......................................................... 2

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ......................................................................... 23

*Whisenant v. City of Haltom City,*
   106 Fed. Appx. 915, 2004 U.S. App. Lexis 16488 (5th Cir. 2004) ......... 11

*Youngberg v. Romeo,*
   457 U.S. 307 (1982) ......................................................................... 24

*Zhao v. Gonzales,*
   404 F.3d 295 (5th Cir. 2005) ............................................................. 24

**Statutes**

42 U.S.C. § 1983 ........................................................................ 4, 11, 12

**Other Authorities**

25 T.A.C. § 229.161 ......................................................................... 18

Dallas City Code § 17-1.6(a)(3) ........................................................ 21

Dallas City Code § 17-1.6(a)(5) ........................................................ 21

Dallas City Code § 17-1.6(a)(5)(A)(i) ................................................ 18

Dallas City Code § 17-1.6(a)(5)(D)(iv) .............................................. 18

Dallas City Code § 17-1.6(b) .............................................................. 2

DM_US:23500386_5

TEX. CIV. PRAC. & REM. CODE § 110.001 ................................................................... 12

U.S. CONST. AMEND. XIV, §1 ................................................................................. 23

**Rules**

FED.R.CIV. P. 12(b)(6) ........................................................................................ 2, 5

FED.R.CIV.P. 56 ..................................................................................................... 3

Big Hart Ministries Association Inc. ("Big Hart"), Rip Parker Memorial Homeless Ministry ("RPMHM"), and William Edwards ("Edwards") (collectively "Plaintiffs") file this Opposition to the City of Dallas' ("the City") Motion for Summary Judgment ("the Motion").

## I.    SUMMARY OF ARGUMENT

The Motion fails to present competent summary judgment evidence, but rather contains conclusory and unsupported statements.  Instead of referring to evidence, the Motion mainly challenges Plaintiffs' Complaint.  The Motion essentially asks this Court to reconsider its prior Order, denying in part, the City's Motion to Dismiss Plaintiffs' Claims.  Not only is this request improper, but it also confirms that the City has not filed a proper summary judgment motion and it cannot carry its burden of establishing the absence of a genuine issue of material fact.

As a result, Plaintiffs are not required to present any evidence concerning their claims. Nevertheless, this Opposition, along with Plaintiffs' Motion for Summary Judgment (DE 80-1) ("Plaintiffs' MSJ"), show that Plaintiffs are entitled to summary judgment on vagueness grounds and genuine issues of material fact preclude summary judgment on Plaintiffs' other claims. Therefore, this Court should deny the City's entire Motion.

## II.   THE CITY'S SUMMARY JUDGMENT BURDEN

As the movant, the City bears the burden of identifying specific portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Ashe v. Corley,* 992 F.2d 540, 543-44 (5th Cir. 1993) (explaining that even though the non-movant has the burden at trial, at the summary judgment stage, the movant bears the burden of demonstrating no material issues of fact).  Simply filing a summary judgment motion does not satisfy that burden; nor does relying on conclusory statements that the non-movant has no evidence to prove its claim.  *Id.*; *Russ v. Int'l Paper Co.,* 943 F.2d 589, 592 (5th Cir. 1991); *U.S. v. Robison,* 78

F.3d 172, 174 (5th Cir. 1996).   In fact, motions offering nothing more than statements of conclusion of law or ultimate fact do not even shift the summary judgment burden to the non-movant.  *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221 (5th Cir. 1985).  Instead, such motions are more properly treated as motions to dismiss under Rule 12(b)(6).  *Ashe,* 992 F.2d at 544; *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 (5th Cir. 2000).

## III.    RESPONSE TO THE MOTION'S STATEMENT OF FACTS

The Motion inaccurately frames two issues which warrant particular attention.  First, the City discusses its application of the Ordinance to the Plaintiffs as if it is a *fait accompli*.  It is not. The Ordinance regulates "Food Establishments."  Motion at 12[1]; Rayzer Dep. 168:16-21, DAPP. 223.  The City, however, does not consider Plaintiffs and those sharing food with homeless people as "food establishments."  Rayzer Dep. 48:5-14; 144:22-145:7; 158:8-11, DAPP. 193, 217-218, and 221, respectively.  Therefore, the Motion overlooks a fundamental problem: the City has no justification for requiring Plaintiffs to comply with the Ordinance.  This misapplication goes to the heart of the burden the Ordinance imposes and its facial vagueness – the very crux of what this case is about.

Second, the Motion mischaracterizes the Homeless Feeder Section as a defense.  The City is wrong.  The Homeless Feeder Section creates an affirmative duty.  Under this Section, a "person commits an offense if he violates, or fails to comply with, a term or condition of a homeless feeding registration."  Dallas City Code § 17-1.6(b), App. 8.  This duty is not limited to persons who apply for registrations.  *Id*.  Moreover, this Section is the only provision in the "defenses" section that contains an affirmative obligation.  *Id*. § 17-1.6, App. 7-8.  Far from providing some voluntary benefit to religious organizations, the Section imposes a legal

---

[1] All citations to motions refer to the page number at the bottom of the page and not the ECF heading page numbers.

obligation on these groups that is not required of persons relying on any other provision of the Ordinance.  When viewed as such, the burden it imposes on the Plaintiffs becomes evident.

**IV.    BECAUSE THE MOTION CONTAINS LITTLE MORE THAN CONCLUSORY STATEMENTS, IT CANNOT SUSTAIN SUMMARY JUDGMENT, NOR CAN IT SURVIVE IF CONVERTED TO A MOTION TO DISMISS**

In addition to mischaracterizing the facts, the Motion also masquerades as a summary judgment motion under Rule 56.  But the Motion is really a "no evidence" motion, similar to the type the Texas state court procedural rules allow.  This distinction is fatal to the Motion.  *See Seastrunk v. Darwell Integrated Tech., Inc.,* No. 3:05-CV-0531-BF, 2009 U.S. Dist. Lexis 77286, at *27-29 (N.D. Tex. Aug. 27, 2009), App. 349-350.  The Federal Rules do not allow "no evidence" motions.  *Id.* at *29, App. 350 (noting that it was frivolous to file a "no evidence" motion in federal court); *Trautmann v. Cogema Mining, Inc.,* No. 5:04-CV-117, 2007 U.S. Dist. Lexis 39387, at *5-9 (S.D. Tex. May 30, 2007), App. 354-355.  To sustain summary judgment under Rule 56, the City must point to specific parts of the record to support its theory that Plaintiffs lack evidence for their claims.  *Ashe,* 992 F.2d at 544.

The Motion fails to identify specific evidence in the record.  This absence of evidence absolutely eliminates the prospect of summary judgment.  The entire Motion merely recites conclusions of law, states ultimate issues of fact, and relies on unsupported statements.  Such baseless suppositions do not discharge the City's summary judgment burden.  *Robinson*, 78 F.3d at 174.  Therefore, this Court should deny the Motion.

The discussion below highlights the most egregious, fact deficient portions of the Motion.

**A.    42 U.S.C. § 1983**

The Motion's specious argument that Plaintiffs have not established the elements of § 1983 is frivolous.  Motion at 10, 24.  Not only does this section of the Motion repeat the

motion to dismiss arguments that this Court has already rejected, but it ignores the very first paragraph of Plaintiffs' Complaint, which states: "This is a civil rights action brought pursuant to 42 U.S.C. § 1983."  Complaint, App. 75.

## B.    Texas Religious Freedom Restoration Act ("TRFRA")

Additionally, despite devoting several pages to Plaintiffs' TRFRA claim, the Motion offers nothing more than conclusions of law or statements of ultimate fact.  The Motion contains no evidence relating to the TRFRA analysis of whether the Ordinance substantially burdens Plaintiffs' free exercise of religion.  Motion at 30-33; *Barr v. City of Sinton,* 295 S.W.3d 287, 299 (Tex. 2009) (stating elements of a TRFRA claim).  Having failed to raise any factual issues, this Court must deny the Motion.  *See Ashe,* 992 F.2d at 544; *Galindo,* 754 F.2d at 1221 (holding that a conclusory affidavit did not discharge the movant's burden to show no fact issues).

## C.    Vagueness and Overbreadth

The Motion's argument regarding Plaintiffs' vagueness claim also fail as it contains no evidence showing that the Ordinance has been fairly enforced or that it provides the requisite notice.  This absence of evidence confirms Plaintiffs' point that summary judgment on the issue of vagueness is warranted.  *See* Plaintiffs' MSJ, DE 80-1.

Additionally, the Motion fails to carry its initial burden regarding Plaintiffs' overbreadth claim.  Utterly devoid of any evidence, the sole statement in the Motion is nothing more than a conclusion of law, arguing that Plaintiffs lack a constitutionally protected liberty interest in food sharing.  Motion at 28.  Viewed in the light most favorable to Plaintiffs and reaching the same conclusion as numerous other courts (Plaintiffs' MSJ, DE 80-1, at 5-6, 16-17), the evidence demonstrates Plaintiffs' food sharing qualifies for Constitutional protection because it is an exercise of their religious beliefs.  Thus, summary judgment is clearly unwarranted.

4

**D.      When Converted To A Rule 12(B)(6) Motion, The Motion Still Fails.**

Lacking any competent summary judgment evidence, the Motion instead focuses on Plaintiffs' Complaint.  Notably, it contains at least 16 challenges to the adequacy of the allegations in the Complaint.  Where as here, a summary judgment motion only challenges the sufficiency of the complaint, courts treat the misnamed motion as a Rule 12(b)(6) motion.  *Ashe,* 992 F.2d at 544; *St. Paul,* 224 F.3d at 440.  However, even if this Court converts the Motion to a motion to dismiss, it still fails.

Over a year ago, this Court evaluated the sufficiency of Plaintiffs' currently plead claims when the City filed a Motion to Dismiss under Rule 12(b)(6).  *See* DE 42.  This Court properly denied in part, the City's Motion to Dismiss.  Aug. 31, 2009 Order, DE 47, App. 360.  Consequently, the Motion's attempt to rehash those arguments is inappropriate, wastes this Court's resources, and mandates denying the Motion.

**V.      SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFFS' CLAIMS IS IMPROPER**

Because the Motion contains nothing more than conclusory statements and thereby fails to carry its initial summary judgment burden, Plaintiffs are not required to produce evidence in opposition to it.  *See Ashe,* 992 F.2d at 543-44.  As shown below, however, even if this Court were to consider the merits of Plaintiffs' claim, the City is still not entitled to summary judgment.

**A.      No Reasonable Fact-Finder Could Conclude Plaintiffs Lack Standing.**

The record establishes that Plaintiffs satisfy the three requirements for standing.

**1.      Plaintiffs have Suffered Several Injuries, All of which Confer Standing in and of Themselves.**

Plaintiffs have suffered four separate injuries, all of which independently confer standing.

DM_US:23500386_5

### i.      Loss of First Amendment Freedoms

Plaintiffs' inability to freely exercise their religious beliefs satisfies the three-prong standing test.   "Loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *McKinley v. Abbott,* No. A-09-CA-643-LY, 2010 U.S. Dist. Lexis 33499, at *11 (W.D. Tex. Mar. 25, 2010), App. 365-366 (quotations omitted); *Croft v. Governor of Texas,* 562 F.3d 735, 745 (5th Cir. 2009).   Therefore, a plaintiff alleging that his own particular religious freedoms are infringed has standing to pursue a violation of the Free Exercise Clause.   *Altman v. Bedford Central Sch. Dist.,* 245 F.3d 49, 51 (2d Cir. 2001) (discussing standing for claims brought under the Free Exercise and Establishment clauses).

Plaintiffs have shown that the Ordinance infringes their particular religious freedom to share food with homeless people.   Specifically, Plaintiffs have testified that by adopting and enforcing the Ordinance, the City has repeatedly prevented Plaintiffs from fulfilling their respective religious mandates to share food with homeless people.   Hart Dep. 94:9-96:5, DAPP. 90 (explaining that the City's Ordinance is attempting to regulate where, when, and how Big Hart ministries preaches); *Id.* at 97:25-98:9, DAPP. 91; Edwards Dep. 91:8-11, DAPP. 174 (stating that the City is trying to stop people from sharing food with homeless people); *Id.* at 105:5-14, DAPP. 178.

In addition, contemporaneous documents describe the City "trying to stop what God has called [Big Hart] to do." June 4, 2007 Newsletter, App. 370; RPMHM Home Page, App. 373 (stating the City's ordinance "violates our right to practice our faith").   These documents recount instances where the City stopped Plaintiffs' food sharing activities and ordered them to stop ministering.   Mar. 5, 2007 Big Hart Newsletter, App. 378; Sept. 1, 2005 New City Policy, App. 380.   As such, Plaintiffs have raised a fact issue that the Ordinance injures them by impinging

their religious freedoms.

The loss of these First Amendment rights also establishes Plaintiffs' standing to assert facial challenges to the Ordinance. *See* Plaintiffs' MSJ, DE 80-1, at 16-17. Contrary to the City's assertion, parties may assert facial challenges without first applying for, and being denied, the registration described in the Ordinance. *See Bench Billboard Co. v. City of Toledo,* 690 F. Supp. 2d 651, 658 (N.D. Oh. 2010); *Adventure Plus, Inc. v. City of Dallas,* No. 3:00-CV-2500-R, 2001 U.S. Dist. Lexis 12612, at *5 (N.D. Tex. Aug. 16, 2001), App. 383.

All that is required to establish standing for a facial challenge is that Plaintiffs contend the Ordinance fails to provide fair notice of the conduct the Ordinance attempts to prohibit. *Beckerman v. City of Tupelo,* 664 F.2d 502, 507 (5th Cir. 1981). The absence of fair notice often inhibits people from exercising their First Amendment rights for fear of being punished for violating the law. *Id.*; *Adventure Plus,* 2001 U.S. Dist. Lexis 12612, at *5, App. 383. This inhibition is a sufficient injury to confer standing. *Beckerman,* 664 F.2d at 507.

Such is the case here. Plaintiffs' MSJ (DE 80-1) details how the Ordinance fails to provide the requisite notice. Additionally, even under the City's misguided theory, Plaintiffs Edwards and RPMHM have undeniable standing because the City refused their registration under the Ordinance. *See Beckerman,* 664 F.2d at 507 (noting that plaintiffs who had been refused a permit had unquestionable standing); *see also* Edwards Dep. 101:2-22, DAPP. 177 (testifying that he tried to have his sites approved); Unapproved Registration Forms, App. 386-391; Edwards Decl. at ¶8, App. 521-522. Taken in the light most favorable to Plaintiffs, this evidence reveals Plaintiffs have suffered injuries which convey standing.

### ii.        The City's Threats of Prosecution

Having issued numerous citations and warnings to Plaintiffs, the City's conclusory arguments regarding standing are baseless.  "A credible threat of present or future prosecution is an injury sufficient to confer standing." *McKinley,* 2010 U.S. Dist. Lexis 33499, at *11, App. 365-366 (holding that a credible threat exists where the statute is aimed directly at the plaintiffs' activities); *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 426 (2d Cir. 1995); *Ch. Of The Holy Light of the Queen v. Mukasey,* No. CV 08-3095-PA, 2008 U.S. Dist. Lexis 102990, at *6-7 (D. Ore. Dec. 19, 2008), App. 394-395; *Bischoff v. Florida,* 242 F. Supp. 2d 1226 (M.D. Fla. 2002). Courts do not require parties to be arrested before challenging an unconstitutional ordinance. *Bankshot Billiards, Inc. v. City of Ocala,* 692 F. Supp. 2d 1343, 1349 (M.D. Fla. 2010).  Rather it is sufficient that the party intends to engage in conduct arguably affected with a constitutional interest and that there is a credible threat the government will invoke the challenged law against the plaintiff. *Mukasey,* 2008 U.S. Dist. Lexis 102990, at *6-7, App. 394-395.

Plaintiffs meet the injury requirement because this litigation challenges the Ordinance that subjects them to present and future prosecution.  *See McKinley,* 2010 U.S. Dist. Lexis 33499, at *12, App. 366; *Adventure Plus,* 2001 U.S. Dist. Lexis 12612, at *5, App. 383. Plaintiffs testified that City has threatened them with fines or arrests for purportedly violating the Ordinance.  Edwards Dep. 30:23-31:1; 34:3-13; 101:2-22, DAPP. 159-160 and 177, respectively; Hart Dep. 114:16-115:11, DAPP. 95; Edwards Decl. at ¶¶4-6, and 10-11, App. 103-104.  As recently as October 31, 2010, Dallas Police officers have enforced the Ordinance against RPMHM volunteers.  Roach Decl. at ¶¶5-7, App. 509-510.  As such, there can be no doubt that the threat of prosecution to Plaintiffs is actual and imminent.  The possibility of punishment at the price of exercising their religious beliefs causes harm to Plaintiffs, and thus, confers standing.

### iii.    Deterrent Effect

Plaintiffs have also suffered injury because the Ordinance required them to change their behavior.  Several courts have found standing where an ordinance deters a litigant's behavior or forces the litigant to modify its behavior.  *Dias v. City and County of Denver,* No. 07-cv-00722-WDM-MJW, 2010 U.S. Dist. Lexis 103814, at *21 (D. Col. Sept. 29, 2010), App. 403 (denying defendant's summary judgment motion where the plaintiff had standing because she changed her behavior by moving and avoiding certain city parks because of the ordinance); *Nitke v. Ashcroft,* 253 F. Supp. 2d 587, 598 (S.D.N.Y. 2003) (holding that an organization had standing where it had been deterred from exercising its First Amendment rights due to the challenged law).

The City admits Big Hart has changed his behavior due to the Ordinance.  Motion at 23 (admitting that "Big Hart has moved the location"); *see also* Hart Dep. 69:3-21; 100:2-4, at DAPP. 84 & 91.  Similarly, the other Plaintiffs have stopped sharing food with homeless people at locations they previously frequented prior to the Ordinance.  Edwards Decl. at ¶¶4-5, App. 103; Willis Dep. 19:10-16; 23:19-23, DAPP. 118-119; *see also* Edwards Decl. at ¶¶10-11, App. 104 (explaining how City personnel forced Plaintiffs to pack up shop before they could share food).  The Ordinance's deterrent effect confers standing.

### iv.    Lost Volunteers

The Ordinance further injures the organizational Plaintiffs (Big Hart and RPMHM) because it eliminated their volunteer base.  Fear of prosecution has discouraged volunteer participation, thereby crippling the organizational Plaintiffs' food sharing activities.  Edwards Decl. at ¶5, App. 103; Edwards Dep. 33:15-34:2, DAPP. 160; Hart Dep. 114:22-115:5, DAPP. 95.  This interference with the organizational Plaintiffs' ability to practice their religious beliefs is an actual injury sufficient to confer standing.  *See Am. Baptist Churches in the U.S.A. v.*

9

*Meese,* 666 F. Supp. 1358, 1361-63 (N.D. Cal. 1987) (finding standing to assert first amendment claim based on direct injuries suffered by the organization where threat of prosecution prevented or discouraged members from participating in their religious practice).  In sum, the Ordinance and the City's enforcement campaign have inflicted several injuries on Plaintiffs.

> **2.      The Ordinance Caused Plaintiffs' Injuries and a Favorable Ruling from this Court will Redress those Injuries.**

The City is not entitled to summary judgment regarding the Plaintiffs' standing because its Motion does not even purport to identify portions of the record that demonstrate an absence of material fact with respect to the remaining two prongs of the standing analysis:  the causal connection between Plaintiffs' injuries and the Ordinance and whether a ruling from this Court would redress those injuries. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (listing the requirements for standing).  As such, the City has failed to carry its burden.

Moreover, considerable evidence establishes these two elements.  First, there can be no dispute that Plaintiffs' injuries directly result from the Ordinance.  As previously noted, City personnel have threatened to arrests Plaintiffs and have issued numerous warnings for alleged violations of the Ordinance. *See Bischoff,* 242 F. Supp. 2d at 1249 (finding that threats and enforcement of the disputed law established causation).  Second, a favorable decision from this Court would redress Plaintiffs' injuries.  Should the Court enjoin the City from enforcing the Ordinance, Plaintiffs would no longer fear or be subject to citations, arrest, or prosecution for violating the Ordinance; rather Plaintiffs could return to their food sharing activities. *See id.* at 1249-50 (noting that a ruling invalidating the statute would redress the plaintiffs' injuries); *Newdow v. Congress,* 435 F. Supp. 2d 1066, 1074 (E.D. Cal. 2006). Therefore, summary judgment regarding Plaintiffs' standing is inappropriate.

### 3.     Third Party Standing

In addition to having standing to redress their own injuries, Plaintiffs also have standing to assert claims on behalf of the Dallas homeless population.   The City's argument to the contrary stems from its mistaken belief that Plaintiffs have not suffered an injury in fact.  Motion at 24.  Plaintiffs' injuries (as detailed above) negate this argument.  Similarly, the Motion fails to point to any evidence regarding Plaintiffs' close relationship with homeless individuals.[2]   The Motion's statement of a legal conclusion regarding third party standing cannot support summary judgment.  As such, this Court should deny the Motion with respect to third party standing.

## B.     Plaintiffs Have Estabilshed The Elements Of 42 U.S.C. § 1983.

The Motion's misdirected argument implying that Plaintiffs have only suffered from isolated governmental action does not rebut Plaintiffs' proof concerning the first two elements of § 1983: an official policy and a policy maker.  *See* Plaintiffs' MSJ, DE 80-1, at 14.  A city can be held liable for its city council's actions "because the city council is the City's policymaking body and, consequently, its decisions constitute City policy."  *Whisenant v. City of Haltom City,* 106 Fed. Appx. 915, 917, 2004 U.S. App. Lexis 16488, at *5 (5th Cir. 2004) (unpublished). Furthermore, actions of the City's employees render the municipality liable where they execute the City's official policy.  *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (per curiam); *Gutierrez v. City of Mesquite,* No. 3:01-CV-0195-G, 2001 U.S. Dist. Lexis 17719, at *7-8 (N.D. Tex. Oct. 30, 2001), App. 407-408 (noting that a municipality may be liable under §

---

[2] Courts have found a close relationship where, as here, a third party's rights would be diluted or adversely affected if the plaintiff's constitutional challenge failed.  *See Craig v. Boren,* 429 U.S. 190, 195 (1976); *Freedom from Relig. Found. v. McCallum,* 179 F. Supp. 2d 950, 965 (W.D. Wis. 2002).  Thus, the Supreme Court held a vendor had third party standing to assert the rights of its customers.  *Craig,* 429 U.S. at 195.  Similarly, Plaintiffs are "vendors" of food and homeless people are their customers.  Hart Decl. at ¶5, App. 505; Roach Decl. at ¶3, App. 507.  Plaintiffs have also established that homeless people's rights to food would be diluted and negatively impacted if the Ordinance remains in force.  Hart Decl. at ¶6, App. 506; Roach Decl. at ¶¶7-8, App. 510.  Therefore, Plaintiffs have the requisite close relationship with the homeless population.

1983 when execution of its policies deprives plaintiffs of their constitutional rights).

The Motion confirms that this is not a case involving mere isolated actions; rather Plaintiffs have established the elements of a policy and policy maker.  The City admits that "the Dallas City Council is the City's final policy maker."  Motion at 25-26.  The Dallas City Council enacted the Ordinance and "may further amend the Ordinance at any time."  *Id*. at 2, fn. 2; City's Answer at ¶9, App. 162.  Acting pursuant to the Ordinance's authorization in Section 17-1.3 (App. 4), City employees have executed and enforced the Homeless Feeder Section.  *See* App. 177-181, 249-265, 289-290, and 293-294; City's Responses to Request for Admissions Nos. 3-9, App. 412-413 (admitting that the City has instructed people to stop sharing food with homeless people because they did not comply with some aspect of the Ordinance).  Therefore, there can be no doubt that Plaintiffs established more than isolated governmental action.

**C.     The Motion Ignores Plaintiffs' Evidence, Which At A Bare Minimum, Creates A Fact Issue With Respect To The TRFRA Claim.**

While conclusive evidence establishes the § 1983 claims, fact issues preclude summary judgment on Plaintiffs' TRFRA claim.  This claim requires the Court to consider:  (1) Does the Ordinance burden Plaintiffs' free exercise of religion as defined by TRFRA? (2) Is the burden substantial? (3) Does the Ordinance further a compelling governmental interest; and (4) Is the Ordinance the least restrictive means of furthering that interest?  *Barr,* 295 S.W.3d at 299.

**1.      Plaintiffs' Free Exercise Of Religion**

Although the City disputes the sincerity of Plaintiffs' religious beliefs, Plaintiffs can prevail at trial by showing that their activities qualify as religious exercises, thereby precluding summary judgment on this issue.  TRFRA defines "free exercise of religion" as an act or refusal to act that is substantially motivated by sincere religious belief.  TEX. CIV. PRAC. & REM. CODE § 110.001.  The City concedes that this determination involves "weighing credibility and other fact

issues." Motion at 19 n.3. Moreover, the City refuses to admit or stipulate to the sincerity of Plaintiffs' beliefs. City's Response to Request for Admission No. 1, App. 412. Cognizant of this factual dispute, the City lacked a good faith basis to seek summary judgment on this claim.

Moreover, based on Plaintiffs' testimony and numerous documents, a reasonable fact finder could conclude that Plaintiffs' religious beliefs compel them to share food with homeless people. *See* Plaintiffs' MSJ, DE 80-1, at 5-6; Helping the Homeless Help Themselves, App. 416 (explaining that RPMHM is a daily street feeding ministry composed of a collection of Christians "obligated by the Spirit of God to do as Christ has commanded"); About Us webpage, App. 419 (stating the Lord led Big Hart to expand its ministry to include a food outreach to homeless people in Dallas); RPMHM website, App. 421. Plaintiffs' evidence demonstrates that their food sharing activities are religious exercises.

### 2.    The Ordinance Substantially Burdens Plaintiffs' Free Exercise Of Religion.

Having demonstrated a sincere religious belief in sharing food with homeless people, Plaintiffs can also show the Ordinance substantially burdens their religious practices. Under TRFRA, a burden is substantial if it is "real vs. merely perceived, and significant vs. trivial." *Barr,* 295 S.W.3d at 301-02. This inquiry focuses on the degree to which the challenged law curtails a person's religious conduct and the resulting impact on his religious expression. *A.A. v. Needville Indep. Sch. Dist.,* 611 F.3d 248, 264 (5th Cir. 2010); *Merced v. Kasson,* 577 F.3d 578, 588-89 (5th Cir. 2009). A "restriction need not be completely prohibitive to be substantial; it is enough that alternatives for religious exercise are severely restricted." *Barr,* 295 S.W.3d at 305. Moreover, courts must measure this burden from the claimant's perspective, not from the government's. *A.A.,* 611 F.3d at 264.

Contrary to the City's unsupported and false assertion, Plaintiffs have repeatedly

explained that the location requirement imposes a substantial burden, with which they cannot comply, because it severely restricts their ability to share food. Hart Dep. 97:25-98:4, DAPP. 91 (testifying that Big Hart is unable to comply with the Ordinance's location requirement); Edwards Decl. at ¶¶7-8, App. 521. Plaintiffs' food sharing practices require them to leave the confines of physical buildings and seek out homeless people. Going out into the streets is essential to their practice. Hart Dep. 18:18-23, DAPP. 71; Hart Decl. at ¶¶2 & 4, App. 504-505; RPMHM website, App. 421. The Ordinance herds homeless people and Plaintiffs to set locations, thereby confining Plaintiffs' activities to these locations. By preventing Plaintiffs from "going out" into the Dallas streets, the Ordinance burdens Plaintiffs' religious practices.

The Ordinance's preapproval requirement also eliminates all spontaneous food sharing and any event that cannot be planned far enough in advance to obtain the City's approval, which can take up to 4 months to obtain. McIntyre Decl. at ¶7, App. 424-425; Hart Decl. at ¶5, App. 505. Because many homeless people are transient, Plaintiffs cannot predict locations where food sharing will occur. Edwards Decl. at ¶¶4 & 6, App. 521. Instead, Plaintiffs share food at locations where they find homeless people. Roach Decl. at ¶¶3 & 6, App. 508-510; Edwards Dep. 27:1-7, 73:3-14, DAPP. 158 & 170, respectively. As a result, the locations change frequently. Edwards Decl. at ¶¶4-6, App. 521.

Complying with the Ordinance would effectively require Plaintiffs to forego sharing food with homeless people. Plaintiffs could not practice their religious beliefs while they waited four months for the City to approve a new site. Hart Decl. at ¶5, App. 505; Edwards Decl. at ¶6, App. 521. At which point, the site may have changed and Plaintiffs would begin anew the wait for approval. All the while, the Ordinance prevents Plaintiffs from sharing food and thus, burdening their religious practices.

14

Furthermore, the Ordinance imposes so many unnecessary and onerous barriers to food sharing, it forces Plaintiffs to curtail or cease their religious activities.   For example, the Ordinance requires Plaintiffs to provide restrooms during their events.   As charitable organizations primarily receiving food donations, rather than financial donations, Plaintiffs cannot afford to rent or purchase port-a-potties.  Edwards Decl. at ¶9, App. 522; Edwards Dep. 100:13-101:1, DAPP. 176-177; Willis Dep. 36:3-11, DAPP. 122.   Moreover, in the past, Plaintiffs shared food daily.  Plaintiffs do not have the means to properly transport and store a port-a-potty 365 days a year.  Edwards Decl. at ¶9, App. 522; Edwards Dep. 56:4-9, DAPP. 165; Hart Dep. 79:22-80:1, DAPP. 86 (explaining that Big Hart does not provide port-a-potties at its weekly events).   As such, the Ordinance's bathroom requirement is cost-prohibitive and it imposes a logistical impossibility for these non-profit organizations.  Viewing these constraints from Plaintiffs' perspective, a reasonable fact finder could conclude the Ordinance burdens Plaintiffs' religious practices.

These burdens are all too real.  The Ordinance effectively coerces Plaintiffs to abandon certain locations, refrain from spontaneously sharing food, and from pursuing their religious beliefs.  Hart Dep. 100:2-4, DAPP. 91 (explaining Big Hart stopped using the Corsicana street location).  Therefore, the preapproved location and bathroom requirements effectively prohibit the majority of Plaintiffs' food sharing activities and thus, the substantial burden standard is met.

**3.      The Ordinance does not Further a Compelling Governmental Interest.**

The City cannot establish that the Ordinance furthers a compelling governmental interest. To prove the Ordinance furthers a compelling interest, the City cannot invoke general governmental interests, rather "a showing must be made with respect to the particular practice at issue." *A.A.,* 611 F.3d at 268 (internal quotations omitted).  As a result, the Court must look

15

beyond broadly formulated interests justifying the Ordinance's general applicability and scrutinize the asserted harm of granting specific exemptions to the Plaintiffs. *See Barr,* 295 S.W.3d at 306; *Merced,* 577 F.3d at 592. This analysis requires the City to introduce evidence showing that the Plaintiffs' religious practices jeopardize its interest. *See A.A.,* 611 F.3d at 268.

The Motion asserts a single broadly formulated interest relating to food safety (Motion at 32), but contains no specific evidence to support that interest with respect to Plaintiffs' religious activities. The absence of this evidence dooms the City's purported interest just as it did the municipality in *Merced.* There, the City of Eules claimed it had a governmental interest in protecting public health. *Merced,* 577 F.3d at 592. But there was no evidence that Merced's religious practices adversely affected anyone's health. *Id.* Because there was no evidence that Merced's religious conduct undermined any governmental interests, the Fifth Circuit held that the City of Eules failed to prove a compelling governmental interest. *Id.* at 593-94; *see also A.A.,* 611 F.3d at 268-271 (holding that the City failed to show how its abstract goals would be adversely affected by granting an exemption to the plaintiff).

The same infirmity plagues the City's governmental interest[3] in this case. Although the Motion states the Ordinance protects food safety, there is no evidence that Plaintiffs' religious activities undermined this interest. Specifically, the City admits it has *no* evidence that:

- Plaintiffs' food sharing caused anyone to receive a food borne illness. Rayzer Dep. 178:22-179:18; 187:19-188:9; 189:4-19, DAPP. 226, and 228-229, respectively;

- Plaintiffs shared food that harmed anyone's health. Rayzer Dep. 180:20-24; 186:13-20, DAPP. 226 & 228;

---

[3] Although not discussed in its Motion, the City has asserted other governmental interests. These interests also fail because either a fact issue exists or the City cannot offer any evidence relating to its interests specific to Plaintiffs' request for an exemption. *See e.g.,* Rayzer Dep. 181:23-182:11, DAPP. 227 (stating the City does not know of any private property being polluted by Plaintiffs sharing food with homeless people); *Id.* at 184:7-12, DAPP. 227 (noting that the City is not aware of any person being prevented from obtaining social services due to Plaintiffs' food sharing efforts).

16

- Plaintiffs dishonestly presented food to any person.  Rayzer Dep. 182:12-16, DAPP. 227; and

- Plaintiffs gave any homeless individual unsafe food.  Rayzer Dep. 184:22-185:2, DAPP. 227-228.

Additionally, each Plaintiff has explained that in the combined 30 years that they have shared food, no one has gotten food poisoning from food Plaintiffs shared.  Edwards Dep. 91:12-25, DAPP. 174; Hart Dep. 79:4-16, DAPP. 86; Edwards Decl. at ¶3, App. 520-521.  As such, a trier of fact could find that the City has no evidence that Plaintiffs' religious practice jeopardizes the City's food safety interest.  Therefore, the City is not entitled to summary judgment.

**4.      Any Purported Governmental Interests are not Narrowly Tailored.**

Considerable evidence reveals lesser restrictive means could achieve the City's purported interest.  Given that the City's interest in food safety has remained the same since 2002, the City's prior ordinances reveal lesser restrictive alternatives to the current Ordinance that could further the City's interest.  Unlike the present Ordinance, a 2002 draft ordinance did not have any approved location restrictions or any requirements for bathroom or hand washing facilities. Rayzer Dep. 213:8-16, DAPP. 236; *compare* Exhibit 25 to Rayzer Dep., App. 443-445, *with* Ordinance, App. 7-8.  Similarly, the 2005 enactment of the Ordinance differs from the present Ordinance because the 2005 enactment did not include any requirements for bathrooms or hand washing facilities.   2005 Ordinance, App. 189-90; Rayzer Dep. 215:22-216:12, DAPP. 236. However, the City admits that in 2002 and 2005 it had its same purported interest in food safety. Rayzer Dep. 213:21-23; 218:1-4, DAPP. 236-237.

In addition to the prior ordinances, the City's admission and expert testimony also confirm that the City could eliminate the Ordinance's bathroom and hand washing requirements. For example, the Ordinance requires Plaintiffs to provide a hand washing facility consisting of a

17

five-gallon container with a spigot of free flowing water, soap, and paper towels. Dallas City Code § 17-1.6(a)(5)(D)(iv), App. 8. However, the City admitted that "in lieu of hand wash stations, [those who share food with homeless people] could use gloves." Rayzer Dep. 239:25-240:6, DAPP. 242. Similarly, Plaintiffs' expert explained that using gloves and hand sanitizers instead of hand washing stations would effectively prevent the spread of food-borne illnesses. O'Connell Decl. at ¶4, App. 448; O'Connell Report at ¶26, App. 457. Thus, the City could, by its own admission, achieve its purported interest without requiring hand washing facilities.

Additionally, the Ordinance requires Plaintiffs to provide restroom facilities for their customers, *i.e.* the homeless people with whom they share food. Dallas City Code § 17-1.6(a)(5)(A)(i), App. 8. In contrast, although the State and the City share the same interest in food safety (*see* 25 T.A.C. § 229.161, App. 441), the state regulations do not require restaurants to provide bathroom facilities for their customers. McAndrew Dep. 91:8-19; 101:13-102:13, DAPP. 352 & 355, respectively. Therefore, eliminating the Ordinance's bathroom requirement provides another lesser intrusive means to achieve the City's alleged interests.

In sum, although the City's bald assertions of ultimate facts and conclusions of law did not shift the summary judgment burden to Plaintiffs, this Opposition designates specific facts that, taken in the light most favorable to Plaintiffs, raise a genuine issue of material fact. As such, summary judgment regarding Plaintiffs' TRFRA claim is improper.

**D.     The City's Conclusory Allegations Render Summary Judgment On Plaintiffs' Free Exercise Claim Inappropriate.**

Ample evidence also supports Plaintiffs' free exercise claim. As discussed above, the Ordinance burdens Plaintiffs' religious activities. The Ordinance also bears no rational relation

18

to the City's alleged interest.[4]   For example, the City claims preapproval is required because it needs to know the source of a potential food-borne illness.  Rayzer Dep. 82:22-84:4, DAPP. 202; *Id*. at 250:15-251:1, DAPP. 245.   But, the City admits it does not require preapproval for churches sharing food with homeless people on church property.  *Id*. at 82:22-84:4, DAPP. 202.  Even without preapproval, the City admits it could trace a food borne outbreak to the unapproved church.  *Id*.  The City's acknowledgment that unapproved locations do not frustrate the City's food safety concerns suggests the City has no rational basis for the preapproval requirement.

The City's ever changing interpretation of the location requirement as it applies to sharing prepackaged food further undermines its interest in preapproved locations.  The City's Motion to Dismiss argued that anyone could provide prepackaged foods to homeless people without regulation or restriction as to time or place.  Motion to Dismiss, DE 42, at 4, 7.  In contrast, the City now claims individuals cannot distribute prepackaged foods to homeless people on the streets, and has so advised an approved meal provider.  Rayzer Dep. 241:18-243:4, DAPP 243; Ex. 91 to Rayzer Dep., App. 525.  These conflicting positions regarding the location restrictions reveal that the City has no rational basis in the preapproved location requirement.

Additionally, fact issues exist concerning whether the City has acquiesced to food sharing at other unapproved locations.  The City has never approved a meal provider site under a bridge.  Rayzer Dep. 204:9-12, DAPP. 233.   But, the City approved a meal provider's request to distribute bottled water and canned drinks to homeless people under bridges.  *Id*. at  205:24-206:12, DAPP. 234; Timothy July 3, 2006 email, App. 488; Ramdhan, July 7, 2006 email, App. 490.  The City's approval of providing beverages to homeless people at unapproved bridges

---

[4] Another fact issue arises because the City's deposition testimony suggests that churches sharing food on their own property can do so under the Private Event Defense.  Motion at 14.  However, several City documents address churches serving food on their own property under the framework of the Homeless Feeder Section.  *See* Dallas Food

undermines the City's stated interest in approved locations.   A reasonable fact finder could determine that the Ordinance does not serve the City's alleged food safety interests.[5]   Therefore, Plaintiffs' Free Exercise claim is not amenable to summary judgment.

**E.      The City is not entitled to summary judgment on Plaintiffs' Equal Protection claim.**

The Motion also fails to establish an absence of a factual issue regarding Plaintiffs' Equal Protection claim.   Plaintiffs must show that the Ordinance treats similarly situated individuals differently and that the Ordinance is not rationally related to a legitimate interest.   *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439-40 (1985).   Plaintiffs demonstrate that animus and arbitrary assumptions underlie the City's alleged interests.

**1.      Disparate Treatment of Similarly Situated Groups.**

The Ordinance treats similarly situated groups differently.   It creates two classes: (1) those whose food sharing activities qualify under the Private Event Defense and (2) those whose food sharing activities qualify under the Homeless Feeder Section.   Both groups share food with homeless people.   Indeed, the same persons can share identical food under either provision.   Thus, the City has admitted that the Plaintiffs can fall under either the private event group or the homeless feeder group.   Motion at 14; Rayzer Dep. 58:5-13, 59:11-22, DAPP. 196.

However, the City treats these groups differently.   Rayzer Dep. 119:20-120:4, DAPP. 211.   The homeless feeder group must comply with the Homeless Feeder Ordinance.   This means

---

Brochure, App. 283; Flowchart, App. 276.

[5] Fact issues also preclude summary judgment that the Ordinance furthers any of the City's other interest.   Having failed to shift the burden to Plaintiffs, this Opposition does not address each interest, even though rebuttal evidence exists.   For example, the City claims the Ordinance furthers its interest in maximizing the availability of social services to homeless people.   City's Answer at ¶93, App. 171.   However, the City admits: "[it] did not come up with the Homeless Feeder Defense to maximize access to services.   The City's position on the homeless defense. . was for health and safety reasons, to be able to track back in the event of food borne illnesses, to minimize exposure for food borne illnesses."   Rayzer Dep. 250:15-251:1, DAPP. 245.   This admission negates any rational basis in maximizing public services.

they must obtain City approval before sharing at any location, provide bathroom facilities, provide hand washing facilities, attend a food safety course, and register with the Director. Dallas City Code § 17-1.6(a)(5), App. 7-8.  Conversely, the private event group has none of these limitations.  *Id.* at § 17-1.6(a)(3), App. 7; Rayzer Dep. 58:2-4; 59:11-22; 62:7-63:6; 82:22-83:1; 84:22-25, DAPP. 196-197 & 202, respectively.

## 2.    The City Lacks a Rational Basis for the Differential Treatment.

The City has no rational basis for the disparate treatment of these two groups because the relationship between the classification and the asserted goal is so attenuated it renders the distinction arbitrary.  *See Cleburne,* 473 U.S. at 446.  The City claims the location at which the food is served distinguishes the two groups and this distinction furthers its interest in food safety. Rayzer Dep. 72:18-25, DAPP. 199.  The evidence rebuts this assertion.

First, the basis for the differential treatment lies in an untenable assumption.  The City admittedly assumes that if a private event is held on the host's property, the host has access to bathrooms, whereas if the host holds the event at another's property he lacks bathroom access. Rayzer Dep. 80:11-81:12; 83:2-13, DAPP. 201-202.  The City makes this assumption despite its acknowledgement that most buildings have bathrooms.  *Id.* at 81:2-12, DAPP. 202.  Notably, Big Hart has held events at property it did not own and the property owner provided bathroom access.  Hart Dep. 84:12-25, DAPP. 87.  Big Hart's experience, coupled with common sense, illustrate that the City's assumption goes too far.  The City's distinction based on bathroom access is so attenuated it qualifies as arbitrary and irrational.

Second, the City admits the same governmental interests in food safety apply to both groups.  *See* Rayzer Dep. 66:9-67:2, DAPP. 198; Motion at 32.  Further, the City acknowledges that the same food safety measures should be observed by private and homeless feeder groups

21

because people at both events could get food poisoning.  McAndrew Dep. 50:13-15; 115:16-24; 116:21-117:9, DAPP. 342 & 358, respectively.  In light of the identical problems and interests, the City has no justification for differential treatment.

The City's other purported justification is equally arbitrary.  The City claims the distinction between the private event group and homeless group is rational because at private events the host is responsible for the welfare of its guests.  Motion at 14.  This argument also defies logic, common sense, and the Ordinance.  The Ordinance and other laws make restaurants responsible for their customer's welfare.  McAndrew Dep. 116:21-117:4, DAPP. 358-359. Indeed, the Ordinance (e.g. Sec. 17-2.2) describes the regulatory scheme with which restaurants must comply for the sole purpose of the customer's welfare.  *See* App. 9-10.  In both instances the food provider, be it a private or a homeless provider group, is responsible for the consumer's welfare.  Therefore, the alleged "responsibility" argument fails the rational basis test.

These arbitrary and rational distinctions support Plaintiffs' contention that the Homeless Feeder Section is a pretext to hide the City's animus towards the presence of homeless people in downtown Dallas.  A "desire to harm a politically unpopular group," is not a legitimate state interests and cannot support disparate treatment of similarly situated groups.  *Cleburne,* 473 U.S. at 444-47; *Bannum, Inc. v. Louisville*, 958 F.2d 1354 (6th Cir. 1992) (finding neighborhood opposition was an illegitimate basis for refusing permit for ex-convict treatment facility).

The City is attempting to revitalize downtown Dallas, which includes the Central Business District ("CBD").  Rayzer Dep. 227:21-228:6, DAPP. 239.  However, business and property owners in downtown Dallas and the CBD have repeatedly complained to the City about the presence of homeless people.  Rayzer Dep. 228:15-22, DAPP. 239.  These citizens felt that homeless people were problematic for many reasons, including the perceived, hurtful impact

they had on property values.  Rawlings Dep. 55:16-56:22, DAPP. 397; Cowart Dep. 52:12-53:6, DAPP. 267-268.  To address these complaints, a draft amendment to the Ordinance proposed prohibiting food sharing with homeless people in the CBD.  Proposed Revision to Ordinance at 2, 7, & 9, App. 493, 498, and 500, respectively.  A trier of fact could conclude animus towards homeless people motivated the City to enact the Ordinance.  Analysis of the City's motivation delves into factual issues, thereby rendering summary judgment on this claim inappropriate.

**F.     The Evidence Supports Plaintiffs' Right to a Liberty Interest in Food.**

The City is not entitled to summary judgment on Plaintiffs' liberty interest claim because the evidence shows that the Ordinance deprives the Dallas homeless population of food, and it does so in a way that is not rationally related to a legitimate interest.  The Fourteenth Amendment proscribes any State from depriving "any person of life, liberty, or property."  U.S. CONST. AMEND. XIV, § 1.  To assert a cause of action "for violation of the Due Process Clause, plaintiffs must assert a recognized liberty interest within the purview of the Fourteenth Amendment, and show that the City intentionally or recklessly deprived them of that interest under color of state law."  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994).

Liberty interests represent those privileges long recognized at common law "as essential to the orderly pursuit of happiness" and so implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed.  *Bd. of Regents v. Roth,* 408 U.S. 564, 572 (1972); *Washington v. Glucksberg,* 521 U.S. 702, 720-21 (1997).  Food is so essential to the pursuit of happiness that one judge noted the necessity of providing food may "drive [people] to accept employment at the peril of their lives."  *Myers v. Chicago,* 95 F. 406, 409 (8th Cir. 1899) (Caldwell, J., dissenting) (negligence case).  Similarly, food is such an implicit concept in ordered liberty that aliens may seek asylum in this country where their government persecutes

23

them by depriving them of food.  *See Zhao v. Gonzales,* 404 F.3d 295, 307 (5th Cir. 2005) (asylum case).  Given its importance, courts have recognized food as a vital necessity.  *See, e.g., Youngberg v. Romeo,* 457 U.S. 307, 315 (1982) (noting that committed individuals have a right to adequate food); *George v. King,* 837 F.2d 705, 707 (5th Cir. 1988); *Hernandez v. Hines*, 159 F. Supp. 2d 378, 385 (N.D. Tex. 2001) ("[F]oster children have a clearly established constitutional right to adequate food"); *Stanford v. Gas Service, Co.*, 346 F. Supp. 717, 719-20 (D. Kan. 1972) (noting that "food, clothing and shelter are considered necessary to sustain life").

Here, the practical impact of the Ordinance is that it denies the homeless population access to life sustaining food.  Homeless people, like everyone else, need food to survive.  City's Response to Request for Admission No. 2, App. 412.  However, the City, through its enforcement of the Ordinance, has instructed food providers to stop sharing food with homeless people.  *See id.* Response to Request for Admission Nos. 3-9, App. 412-413; Rayzer Dep. 273:20-274:9, DAPP. 251.  In so doing, the City deprived these homeless people of food they would have otherwise received from Plaintiffs and others.  Roach Decl. at ¶¶7-8, App. 510.

The inevitable practical result is that the homeless population will seek food from highly unsanitary sources.  Cowart Dep. 23:6-14, DAPP. 260 (noting that unsheltered homeless people could either get food from food providers or other sources like dumpsters); *Id.* at 110:21-111:1, DAPP. 282; McIntyre Decl. at ¶4, App. 424.  In practice, the Ordinance limits the homeless population's access to food sources.  Roach Decl. at ¶8 and Ex. B. thereto, App. 510 & 514-518 (stating that they do not know where they would obtain food if RPMHM stopped serving); Edwards Decl. at ¶11, App. 522; O'Connell Report at ¶33, App. 459.

Since the Ordinance was enacted the number of individuals and organizations that can legally share food with homeless people has decreased dramatically.  In 2005, 883 people

24

registered to share food with homeless people under the Ordinance. Homeless Food Safety Program List, App. 250; Rayzer Dep. 153:24-154:16, DAPP. 220. As of June 2009, 689 of those people can no longer legally share food. *Id*. Similarly, the number of charitable organizations legally able to share food has decreased. Of the 224 organizations originally registered, only 62 organizations were registered four years later. *Id*. In other words, more than 70% of those who could previously share food are no longer able to do so under the Ordinance. Consequently, fewer homeless individuals are receiving adequate food. Hart Decl. at ¶6, App. 506.

Limiting the number of food providers bears no rational relationship to the City's alleged food safety interest, particularly when there were no documented instances of food poisoning prior to the Ordinance. *See* Rayzer Dep. 236:23-237:19, DAPP. 241-242. Obviously, obtaining food from Plaintiffs provides a better alternative than obtaining food from dumpsters. Rawlings Dep. 96:17-97:6, DAPP. 407-408. No rational relationship exists between eliminating a safe food source in food providers and encouraging homeless people to rely on dumpsters. Thus, under the rational basis test, the Ordinance fails, as does the summary judgment Motion on this claim.

## VI.   CONCLUSION

By offering only conclusory assertions, the Motion does not even come close to carrying its initial summary judgment burden and is instead another motion to dismiss masquerading as a summary judgment motion. Although not required to do so given the severe infirmities in the Motion, Plaintiffs have identified specific evidence which demonstrates that they can prevail on their claims or material issues of fact exist. Accordingly, the Motion should be denied.

Respectfully submitted,

Dated:  November 5, 2010

HOWREY, LLP

By:   _s/ Deidra Penny_____
Deidra Penny

25

Lead Attorney
State Bar No. 24036668
pennyd@howrey.com
1111 Louisiana, 25th Floor
Houston, Texas 77002
713-654-7668 (phone)
713-787-1440 (fax)

Attorneys for Big Hart Ministries
Association Inc. a/k/a Big Heart Ministries,
the Rip Parker Memorial Homeless
Ministry, and William Edwards

**CO-COUNSEL:**
Tulin Ozdeger
National Law Center on Homelessness & Poverty
1411 K Street NW, Suite 1400
Washington, DC 20005
202-638-2535
tozdeger@nlchp.org

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.


 _s/ Deidra Penny_____
Deidra Penny, Attorney for Plaintiffs