IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BIG HART MINISTRIES ASSOCIATION § | | |
| INC. a/k/a BIG HEART MINISTRIES | § | |
| et al., | § | |
| | § | |
|       Plaintiffs, | § | CIVIL ACTION NO. |
| v. | § | 3:07-CV-0216-P |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
|       Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are: (1) Plaintiffs Big Hart Ministries Association, Inc. a/k/a Big Heart Ministries, Rip Parker Memorial Homeless Ministry, and William Edwards's (collectively "Plaintiffs") Motion for Partial Summary Judgment that the Ordinance is Impermissibly Vague (Docket #80); (2) Defendant City of Dallas's Motion for Summary Judgment (Docket # 82); and (3) Defendant City of Dallas's Motion to Strike (Docket #85).

After reviewing the parties' briefing, the evidence, and the applicable law, the Court DENIES as PREMATURE and without prejudice to refiling Plaintiffs' Motion for Partial Summary Judgment, DENIES the City's Motion for Summary Judgment,[1] and (3) DENIES as MOOT the City's Motion to Strike.

## BACKGROUND

This lawsuit involves a constitutional challenge to the City of Dallas's Food Establishments Ordinance (the "Ordinance"), which regulates food establishments, including

---

[1] The City of Dallas has failed to comply with Local Rule 7.2(d), which requires briefs in excess of ten pages to contain a table of contents with page references. L.R. 7.2(d). This is a complex case involving numerous parties, claims, and legal issues. The Court would have appreciated being able to refer to a table of contents when working through the various issues.

organizations that feed the homeless.  Plaintiffs are Big Hart Ministries Association Inc. ("Big Hart"), Rip Parker Memorial Homeless Ministry ("Rip Parker") and William Edwards ("Edwards") (collectively, "Plaintiffs").  Big Hart and Rip Parker are religious organizations that believe their religious faith requires them to share meals with the homeless.  (Pl.s' Third Am. Compl. ("Compl") 5 ¶ 11); Don Hart Dep. 18:7-19:7, 37:4-11.

The stated purpose of the Ordinance, which was enacted in 2005, is as follows: "to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented."  D.C.C. § 17-1.1; 25 T.A.C § 229.161.  The Ordinance sets forth requirements for food establishments in an attempt to ensure the safe handling of food served to the public.  The Homeless Feeder Defense allows "church, civic, or other charitable organization" to distribute food to homeless individuals outside the regulatory structure of the Ordinance if the organization meets certain food safety criteria including: location approval by the agency, portable toilets, equipment for waste and wastewater, handwashing facilities for servers, written consent of the property owner, on-site staff who has attended a city-sponsored food safety training class, and temperature-controlled food storage .  D.C.C § 17-1.6(5).

## DISCUSSION

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence.  *Celotex*, 477 U.S. at 323.  However, all evidence and reasonable

inferences to be drawn there from must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The party defending against the motion for summary judgment cannot defeat the motion, unless he provides specific facts demonstrating a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (*citing Celotex*, 477 U.S. at 324)). Further, a court has no duty to search the record for evidence of genuine issues. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### A. Standing

As an initial matter, the City argues that Plaintiffs lack standing to bring any of their claims. Article III standing requires a plaintiff to demonstrate: "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'n Co., L.P. v. APCC*

3

*Servs., Inc.*, 554 U.S. 269, 273 (2008) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992)); *see also Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217-18 (5th Cir. 2002). It is a plaintiff's burden to establish he has standing. *Lujan*, 504 U.S. at 561; *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-15 (1979).

The City of Dallas argues Plaintiffs lack standing because they have suffered no concrete injury fairly traceable to the Ordinance. (Docket #84 at 21-24.) It contends Big Hart continues to feed the homeless in compliance with the Ordinance in the same manner as it did before the Ordinance went into effect, thereby suffering no injury. (Docket #84 at 23.) The City also maintains Plaintiffs have suffered no injury because The City has never denied Big Hart's preferred location as a Homeless Meal Provider Site. (Docket #84 at 23.)

Plaintiffs respond that they have suffered four separate injuries: the loss of their first amendment freedoms; the City's threat of prosecution; forced change of behavior; and lost volunteers. The City does not reply to any of Plaintiffs' standing arguments.

"Generally speaking, a 'conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Article III.'" *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999) (quoting *Diamond v. Charles*, 476 U.S. 54, 64 (1986)). "Moreover, a private party need not 'first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'" *Whitehouse*, 199 F.3d at 30 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). "Thus, in a pre-enforcement challenge to a statute carrying criminal penalties, standing exists when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but

proscribed by [the]statute, and there exists a credible threat of prosecution.'" *Id.* at 30-31 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Here, Plaintiffs and their volunteers intend to serve food to homeless people in accordance with their religious belief that they should help those in need – conduct that is arguably constitutionally protected. Plaintiffs have testified that local law enforcement has threatened them with tickets, fines or arrests while Plaintiffs attempted to share food with homeless people in violation of the Ordinance. (Docket #83-8 at 159, 160, 177; Docket #83-4 at 95; Docket #81-2 at 103; Docket 90-3 at 424; Docket #90-5 at 510.)

Plaintiffs' testimony indicates the threat of prosecution is actual and credible. The City of Dallas has not presented any evidence to the contrary. Accordingly, the Court finds that Plaintiffs have alleged an injury-in-fact for purposes of proving standing.

## B. Statutory Claim – Texas Religious Freedom Restoration Act.

It is a fundamental and long-standing principle of judicial restraint that a court will avoid reaching a constitutional question if it can decide the issue on a statutory ground. *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 258 (5th Cir. 2010).

The TRFRA prevents any government agency in Texas from "substantially burden[ing] a person's free exercise of religion" unless it "demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that interest. Tex. Civ. Prac. & Rem. Code § 110.003(a), (b).

When analyzing a claim brought pursuant to the Texas Religious Freedom Restoration Act ("TRFRA"), the court applies a four-part test: (1) whether the government's regulation burdens the plaintiff's free exercise of religion;[2] (2) whether the burden is substantial; (3)

---

[2]   The City argues, without citation, Rip Parker does not exist as an entity and espouses no religious doctrine. (Docket #95 at 9.) However, Plaintiffs have submitted testimony from people who volunteered to feed the homeless

whether the regulations further a compelling governmental interest; and (4) whether the regulations are the least restrictive means of furthering that interest. *Merced v. Kass*on, 577 F.3d 578, 588 (5th Cir. 2009) (*citing Barr v. City of Sinton*, 295 S.W.3d 287, 300 (Tex. 2009)).

First, Plaintiffs must outline the scope of their 'free exercise of religion', which is defined in the TRFRA as "an act . . . that is substantially motivated by sincere religious belief." Tex. Civ. Prac. & Rem. Code § 110.001(a)(1); *see Betenbaugh*, 611 F.3d at 260. "In examining a putative religious belief under the TRFRA, 'it is not necessary to determine that the act . . . is motivated by a central part or central requirement of the person's sincere religious belief.'" *Betenbaugh*, 611 F.3d at 260 (citation omitted).

Second, a burden is 'substantial' under the TRFRA if it is "real vs. merely perceived, and significant vs. trivial." *Betenbaugh*, 611 F.3d at 263-64. This inquiry focuses on the "degree to which the challenged law curtails a person's religious conduct and the resulting impact on his religious expression" as "measured . . . from the person's perspective, not from the government's." *Id.* at 264. "This inquiry is 'case-by-case' and 'fact-specific' and must take into account 'individual circumstances.'" *Id.* (citation omitted).

The City contends that while Plaintiffs' religious beliefs may compel them to share food with the homeless, Plaintiffs have not demonstrated that their religious beliefs compel them to share food with the homeless in a manner that violates the Ordinance. The City contends in a

---

through Rip Parker (Docket #90-3 at 423, 508) and from its purported founder and director/coordinator William Edwards. (Docket #90-5 at 520, *see also* 508.) Plaintiffs have also submitted pamphlets generated by Rip Parker (Docket #90-1 at 373) and a copy of their webpage (Docket #90-3 at 416, 421.) These documents are evidence the entity exists. The pamphlet explicitly states that Rip Parker's mission is to feed and minister to those in need "as Christ instructed"). (Docket # 90-1 at 373.) Rip Parker's webpage describes the organization as a "collection of dedicated Christian brothers ans sisters obligated by the spirit of God to do as Christ has commanded. We are a daily street feeding ministry in Dallas, TX." (Docket #90-3 at 416.) There is no doubt the organization affiliates itself with Christianity and preaches in the name of Christ.

conclusory fashion that the Ordinance's location restrictions and the Ordinance's requirements for sanitary facilities and safe food handling "do not interfere with or burden their sharing meals with homeless people . . ." (Docket #84 at 30.)  The City goes on to argue that even if the Ordinance does impose a burden, that burden is not substantial because Plaintiffs have "always substantially complied with the food safety requirements of the Ordinance." (Docket #84 at 31.)

Plaintiffs respond that the location requirement substantially burdens their religious expression because it severely restricts their ability to share food in accordance with their religious beliefs.  Plaintiffs' food sharing practices require them to seek out homeless people in the communities' streets and feed them.  (Docket #90-3 at 421, 504, 520.)  According to the testimony of Mr. Don Hart and Mr. William Edwards, founder/pastor with Big Hart Ministries Association and founder/director/coordinator of Rip Parker, respectively, their religious calling requires them and their organizations to go out into the streets to feed and minister to the homeless.  (Docket # 90-5 at 520-21.)  Plaintiffs and their volunteers feed the homeless at different locations that change frequently due to the constantly changing circumstances of the homeless people they serve.  Plaintiffs routinely drive around Dallas looking for homeless individuals with whom to share food.  Once they locate a group, Plaintiffs will stop, share their food, and share religious teachings.  Plaintiffs testify the Ordinance's pre-approved location requirement restricts their ability to practice their religious beliefs because it burdens their ability to spontaneously share food with homeless people or to actively seek them out in hard to reach, unpredictable, and ever-changing locations. (*Id.* at 505, 521.)  Plaintiffs also testify that waiting for location preapproval would effectively halt their food sharing practices since obtaining City approval is a lengthy process.  (*Id.* at 424; 521-22.)  Mr. Hart testified that his ministry fed the homeless out in the streets "at least once a week" prior to enactment of the Ordinance.  (*Id.* at

505.) But that has changed because many of the pre-approved homeless feeder locations are not feasible or practical  locations for sharing the ministry's evangelical message due to the location's affiliation with other organized religions. (Docket #90-5 at 505.) Further, according to Mr,. Hart, some homeless people will not go to the pre-approved locations and will not trust the servers at these types of locations. (*Id.*) Big Hart Ministries mission is to seek out these homeless people, establish trusting relationships with them by feeding them, and ultimately minister to their spiritual needs. (*Id.*)

Plaintiffs also respond that the burden to provide restroom facilities when sharing food is substantial. They testify that they do not have the financial means to purchase, store, or transport a port-a-potty around town to its feeding locations. Complying with this requirement makes it impracticable to comply with the Ordinance. *Id.* at 522.

Plaintiffs have testified they feed far fewer people than they did before the Ordinance was enacted and they have lost volunteers who fear repercussions from the City for violating the Ordinance. (Docket # 506.) Plaintiffs argue the Ordinance effectively forces Plaintiffs to abandon certain locations, refrain from spontaneously sharing food, and from pursuing their religious missions.

The Court finds Plaintiffs have submitted sufficient evidence from which a jury could conclude the Ordinance substantially burdens Plaintiffs' free exercise of religion. Therefore, the City's motion for summary judgment on this statutory basis is DENIED.

### C. Constitutional Claims.

"Because courts do not decide constitutional claims when a case can be footed on alternative grounds," our analysis begins and ends with the TRFRA. *Bettenbaugh*, 611 F.3d 248. The gist of all Plaintiffs' claims, both statutory and constitutional, is that the Ordinance is

unlawful because it prevents Plaintiffs from providing food to those in need by imposing unduly burdensome restrictions and requirements on them.[3]  The Court has decided Plaintiffs have presented enough evidence to withstand summary judgment on their statutory TRFRA claim.  If Plaintiffs prevail at trial on their TRFRA claim, their federal constitutional claims will be rendered moot.  If the City prevails at trial by overcoming the increased burdens imposed on it by the TRFRA, it will have necessarily prevailed on the federal constitutional claims.

Courts "do not decide questions of a constitutional nature unless absolutely necessary to decide a case."  *Id.*  Because this case can be resolved on state statutory grounds, the Court declines to address Plaintiffs' constitutional claims on summary judgment.

### D. City's Motion to Strike

The City moves to Strike Exhibit 30 to Plaintiffs' Motion for Partial Summary Judgment Appendix.  The Court did not use this exhibit in its analysis, and accordingly the Motion to Strike is DENIED as moot.

### CONCLUSION

For the foregoing reasons, the Court: (1) DENIES as premature and without prejudice to refilling Plaintiffs' Motion for Partial Summary Judgment; (2) DENIES the City's Motion for Summary Judgment; and (3) DENIES as moot the City's Motion to Strike.

**IT IS SO ORDERED.**

Signed this 4th day of November 2011.

---

[3] The Court recognizes that if the City prevails at trial, Plaintiffs' constitutional claim based on vagueness will remain ripe and unresolved.  The Court will resolve that motion only if necessary after the statutory claims have been resolved at trial.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE